UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

TONY ABOUDIB and ADVANCED
PAIN CLINIC, LLC,

        Plaintiffs,

v.                                        Case No. 1:14-CV-452

MATRIX DIAGNOSTIC IMAGING, LLC,        HON. GORDON J. QUIST
ELITE VIEW IMAGING, LLC, JAMES
WALLER and ROBERT HOLLAND,

        Defendants.

_____/

## OPINION

Plaintiffs, Tony Aboudib and Advanced Pain Clinic, LLC (APC), invoking this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332(a), have sued Defendants, Matrix Diagnostic Imaging, LLC (Matrix), Elite View Imaging, LLC (Elite), James Waller, and Robert Holland, alleging state-law claims for breach of contract, fraud, promissory estoppel, conversion, enforcement of purchase agreement/specific performance, breach of guaranty, and civil conspiracy. All of Plaintiffs' claims arise out of Defendants Matrix's and Waller's alleged failures to perform their obligations under an Asset Purchase Agreement with APC.

Defendants Matrix, Elite and Waller have now moved to dismiss Plaintiffs' amended complaint[1] pursuant to Federal Rule of Civil Procedure 12(b)(1)–(3) on the grounds that the Court

_____

[1] On April 30, 2014, the Court entered an Order to Show Cause directing Plaintiffs to file an amended complaint addressing deficiencies in their original complaint relating to diversity jurisdiction. (Dkt. # 6.) In particular, the Court noted that Plaintiffs failed to allege the residences of the members of APC, Matrix and Elite, all of which are limited liability companies. Plaintiffs filed their amended complaint on May 14, 2014, alleging that APC's two members, Aboudib and his wife, reside in Michigan, and Matrix's and Elite's sole member, Waller, resides in Texas. (Dkt. # 7 at Page ID#23.)

lacks subject matter jurisdiction and personal jurisdiction over Matrix, Elite and Waller, and venue in this district is improper.[2]  For the reasons set forth below, the Court will grant the motion and dismiss Defendants Matrix, Elite and Waller from this action.

## I. BACKGROUND

Aboudib is a resident of Michigan and APC is a Texas limited liability company.  (Dkt. # 7 at Page ID#23, ¶ 5.)  Aboudib and his wife, who also resides in Michigan, are the only members of APC.  Defendants Matrix and Elite are Texas limited liability companies, whose members reside in Texas and Louisiana.  (Dkt. # 17-1 at Page ID#67, ¶ 4.)  Defendant Waller resides in Texas and is a member of Matrix and Elite.  (*Id.* ¶¶ 3, 4.)  Defendant Holland resides in Louisiana, and apparently  is the second member of Matrix and Elite.  (Dkt. # 7 at Page ID#23, ¶ 11; dkt. # 17-1, Page ID#67, ¶ 4.)

Prior to October 2012, Aboudib conducted a chiropractic business through APC in Southlake Texas.  (Dkt. # 17-1 at Page ID#67, ¶¶ 5, 6.)  At some point, Aboudib relocated to Michigan, but left certain equipment APC used in its business at its former Texas location.  (*Id.* ¶¶ 6, 8.)  On or about October 1, 2012, APC and Matrix entered into an Asset Purchase Agreement (Agreement), pursuant to which Matrix agreed to purchase from APC certain assets that APC used in its business for a total purchase price of $75,000.00.[3]  (Dkt. # 17-3.)  The equipment covered by the Agreement included  "(a) a Phillips  BV26  Mobile  Image  Intensifier/C-Arm  (the  'C-Arm');  (b) a pain management table (the 'Pain Table'); and (c) an anesthesia supply cabinet/cart (the 'Anesthesia

---

[2] Defendant Holland has not joined in, or taken a position on, the instant motion.

[3] Although not germane to the Court's resolution of the instant motion, the Court questions whether Plaintiff Aboudib is properly included in this case.  Aboudib was not a party to the Agreement and is simply a member of APC. As such, it appears that Aboudib would lack standing to sue based on Defendants' failure to perform under the Agreement.  *See* M.C. L. § 450.4510 (members of an LLC may not sue for claims of the LLC unless the LLC refuses to sue).

Cart')."  (Dkt. # 17-1 at Page ID#68, ¶ 10; dkt. # 17-3 at Page ID#105.)[4]  One of the Agreement's recitals stated that the sale was "[c]ontingent upon [Matrix] completing their transaction with Southwest Securities, FSB; 1201 Elm St. #3500, Dallas TX 75720 for the assignment of the debt agreement/note with regard to the MRI machine expected to occur on or before October 31, 2012." (Dkt. # 17-3 at Page ID#103.)  The MRI machine, a Hitachi Airis II MRI machine, was owned by Advanced Imaging, Inc. d/b/a Advanced Imaging.  (Dkt. # 17-1 at Page ID#68, ¶ 11.)  Defendant Waller personally guaranteed Matrix's payment obligation to the extent of $50,000, also contingent on the completion of the MRI transaction with Southwest Securities FSB.  (Dkt. # 17-3 at Page ID# 105.)

The purchase transaction contemplated by the Agreement never occurred because Advanced Imaging filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Western District of Michigan on October 1, 2012.  (Dkt. # 17-1 at Page ID#68.)  Because the MRI machine became a part of Advanced Imaging's bankruptcy estate, Southwest Securities was unwilling to negotiate an agreement with Matrix to assume Advanced Imaging's obligation to Southwest Securities, and Matrix was never able to complete a transaction with Southwest Securities as contemplated by the Agreement.  (Dkt. # 17-1 at Page ID#69, ¶¶ 15-18.)

In 2013, Elite negotiated an agreement with Advanced Imaging's bankruptcy trustee to purchase the MRI machine from Advanced Imaging's bankruptcy estate.  The bankruptcy court approved the trustee's motion for approval of the sale on April 9, 2003.  (Dkt. # 17-1 at Page ID #69, ¶¶ 18–19; Dkt. # 17-4; Dkt. # 17-5.)

---

[4] The Agreement provided that the equipment it covered would be listed on Exhibit 2.1(a) to the Agreement. Neither of the copies of the Agreement that the parties have submitted contains any exhibits.  However, Defendant Waller describes in his affidavit some of the equipment that was covered by the Agreement.  Aboudib and APC do not dispute that the property Waller describes was covered by the Agreement.

3

Although the transaction set forth in the Agreement did not occur, the property covered by the Agreement—the C-Arm, Pain Table, and Anesthesia Cart—remained at Matrix's business location until May of 2013.  In May 2013, Aboudib entered into a purchase agreement with Carl Naehritz D.C. for the sale of the C-Arm, Pain Table, and Anesthesia Cart for a purchase price of $10,000.00.  (Dkt. # 17-6.)  Aboudib arranged to have the equipment (which was at Matrix's location in a storage room) delivered to Dr. Naehritz's office in Bedford, Texas.  (Dkt. # 17-1 at Page ID#69.)

## II. DISCUSSION

### A.    Lack of Subject Matter Jurisdiction—Amount in Controversy

This court has "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1).  Defendants argue that the Court lacks subject matter jurisdiction because it is a legal certainty that Plaintiffs cannot claim the jurisdictional amount of $75,000.  Defendants note that under the Agreement, the most Plaintiffs could recover is $75,000 because that was the purchase price Defendants were to pay.  Defendants contend that because Plaintiffs eventually sold some of the property covered by the Agreement to Dr. Naehritz, the $10,000 that Plaintiffs realized from the sale would reduce the amount of damages that Plaintiffs could recover to less than $75,000.

The general rule in diversity cases is that the amount claimed by a plaintiff in his complaint determines the amount in controversy, unless it appears to a legal certainty that the claim is for less than the jurisdictional amount.  *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89, 58 S. Ct. 586, 590 (1938).  The amount in controversy is measured at the time the complaint is filed. *Klepper v. First Am. Bank*, 916 F.2d 337, 340 (6th Cir. 1990).  However, "the lack of the

4

jurisdictional amount from the outset—although not recognized until later—is not a subsequent change that can be ignored." *Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459, 462 (6th Cir. 2010) (internal quotation marks and brackets omitted).  In determining whether the jurisdictional amount is met, a court should consider the type of relief authorized under state law.  *See Randall v. Pitzer*, 23 F. App'x 532, 533 (6th Cir. 2001).

In this case, it would appear on initial review that to a legal certainty Plaintiffs cannot establish a claim  in excess of the $75,000 jurisdictional threshold because Plaintiffs received $10,000 from the sale of at least some of the property covered by the Agreement to Dr. Naehritz. Plaintiffs note, however, that if they are successful in establishing their conversion claim, they may recover treble damages pursuant to M.C.L. § 600.2919a.  Defendants respond that under Michigan law, because Plaintiffs' claims arise out of a contract, their remedies are based on contract law, not tort law.  Thus, Defendants argue, Plaintiffs cannot rely on treble damages to establish the amount in controversy.  While Defendants' argument may be persuasive in the context of a motion to dismiss or a motion for summary judgment, "[t]he test for whether the jurisdictional amount has been met considers whether the plaintiff can succeed on the merits in only a very superficial way." *Kovacs v. Chesley*, 406 F.3d 393, 396 (6th Cir. 2005).  That is, a court considers only whether state law permits the type of damages claimed.  *Id.* at 397.  Given the availability of treble damages in this case—without considering the merits—the Court concludes that Plaintiffs have established that the amount-in-controversy requirement is satisfied.

**B.     Lack of Personal Jurisdiction**

Plaintiffs bear the burden of showing that jurisdiction exists.  *Int'l Techs. Consultants, Inc. v. Euroglas S.A.*, 107 F.3d 386, 391 (6th Cir. 1997).  "[I]n the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleading but must, by affidavit or otherwise, set

forth specific facts showing that the court has jurisdiction." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). A court must construe pleadings and affidavits in the light most favorable to the party asserting personal jurisdiction. *See Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). Where a motion to dismiss for lack of personal jurisdiction is decided without an evidentiary hearing, the plaintiff need only make out a prima facie showing of personal jurisdiction. *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998) (quoting *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996)).

A federal court may exercise personal jurisdiction over an out-of-state defendant only if the defendant has "certain minimum contacts with [the forum] such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 C. St. 154, 158 (1945) (quoting *Millken v. Meyer*, 311 U.S. 457, 463, 61 S. Ct. 339, 343 (1940)). Personal jurisdiction may be of two types: "general jurisdiction, where the defendant has continuous and systematic contact with the forum state, or limited jurisdiction, where the subject matter of the lawsuit is related to the defendant's contacts with the forum state." *Walker Motorsport, Inc. v. Henry Motorsport, Inc.*, No. 95-2250, 1997 WL 148801, at *2 (6th Cir. Mar. 31, 1997) (per curiam) (internal citation and quotation marks omitted). Assessing the existence of jurisdiction involves a two-part process: "(1) first, the court must determine whether any of Michigan's relevant long-arm statutes authorize the exercise of jurisdiction over Defendants; and, if so, (2) the court must determine whether exercise of that jurisdiction comports with constitutional due process." *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 550 (6th Cir. 2007).

Plaintiffs have failed to carry their burden in this case. In support of their motion, Defendants submit an affidavit from Defendant Waller. Defendant Waller states that he resides in Texas, that Matrix and Elite are Texas limited liability companies, and that Matrix's and Elite's

members reside in Texas and Louisiana.  (Dkt. # 17-1 at Page ID#67, ¶¶ 3, 4.)  Waller further states

that no Defendant conducts, or has conducted, business in Michigan, nor do they market any of their

services in Michigan.  (*Id.* ¶ 7.)  Finally, Waller states that all of the negotiations regarding the

purchase transaction covered by the Agreement occurred in Texas, and all of the property that was

the subject of the Agreement is, and has always been, located in Texas.  (¶ 8.)  Plaintiffs have not

submitted affidavits or other evidence to refute Waller's factual assertions or to show that

Defendants have  sufficient contacts with Michigan.

       Plaintiffs argue that Defendants are subject to Michigan's long-arm statutes because they

transacted business in Michigan.  *See* M.C.L.A. §§ 600.705(1) (individuals), 600.715(1)

(corporations).  Plaintiffs contend that Defendants' contacts with Michigan suffice to meet the

requirements of both Michigan's long-arm statute and due process because Defendants knew that

they were contracting with a company with a place of business in Michigan, accepted instruction

from one of Plaintiff's members who resided in Michigan, and consented to jurisdiction in

Michigan, as evidenced by the following provision in the Agreement:

> 7.6 <u>Governing Law and Forum</u>.  The proper venue and forum as chosen and
> agreed to by the parties to this Agreement shall be governed by and construed in
> accordance with the laws of the State of Michigan.

While a valid forum selection clause can confer personal jurisdiction in Michigan over an out-of-

state defendant, *see* M.C.L.A. §§ 600.701, 600.711, 600.745; *Walbridge Aldinger Co. v. Angelo

Iafrate Constr. Co.*, No. 308223, 2013 WL 3836228, at *4 (Mich. Ct. App. July 25, 2013) (per

curiam) ("A valid forum-selection clause, even standing alone, can confer personal jurisdiction.")

(internal quotation marks and brackets omitted), the quoted provision, captioned "Governing Law

and Forum," does not select a forum for litigation of disputes.  It simply says that the chosen venue

and forum—whatever it is—will be governed by Michigan law.  Nothing in that provision or any

other provision of the Agreement states that the parties chose Michigan or any other jurisdiction as

a proper forum.  As such, Defendants did not consent to jurisdiction in Michigan.  With regard to

Plaintiffs' remaining contentions—that Defendants contracted with a company with a place of

business in Michigan and accepted instruction from one of its members in Michigan—such activity,

in this Court's judgment, does not constitute the transaction of business *within* Michigan.  That is,

nothing in the record shows that Defendants actually transacted any business in Michigan, nor is

there any indication that Defendants or their agents traveled to Michigan or even sent

correspondence or made telephone calls to Plaintiffs in Michigan concerning the transaction covered

by the Agreement.  In fact, it is undisputed that the Agreement was negotiated in Texas, that the

property subject to the Agreement was located in Texas, and that the Agreement was to be

performed in Texas.

Even if the Court concluded that Michigan's long arm statutes authorized jurisdiction over

Defendants, Plaintiffs have not shown that the exercise of jurisdiction would comport with due

process.  In deciding whether the exercise of personal jurisdiction would offend due process, the

Sixth Circuit applies the following three-part test:

> First, the defendant must purposefully avail himself of the privilege of acting
> in the forum state or causing a consequence in the forum state.  Second, the cause of
> action must arise from the defendant's activities there.  Finally, the acts of the
> defendant or consequences caused by the defendant must have a substantial enough
> connection with the forum state to make the exercise of jurisdiction over the
> defendant reasonable.

*S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

The purposeful availment requirement ensures that the defendant has purposefully entered

into a connection with the forum "such that [it] should reasonably anticipate being haled into court

there."  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 567 (1980).

"[T]he mere existence of a contract . . . is insufficient to confer personal jurisdiction." *Calphalon Corp. v. Rowlette*, 228 F. 3d 718, 722 (6th Cir. 2000). In *Kerry Steel, Inc. v. Paragon Industries, Inc.*, 106 F.3d 147 (6th Cir. 1997), the plaintiff, a Michigan business, approached the defendant, an Oklahoma company, offering to sell the defendant steel coils. The parties negotiated the purchase by telephone and fax. The defendant then accepted the plaintiff's offer by telephone and thereafter sent purchase orders to the plaintiff in Michigan. After the defendant took possession of the steel coils in Illinois, it refused to pay the full purchase price. The court held that, on these facts, the plaintiff failed to demonstrate purposeful availment:

> Paragon has no employees or offices in Michigan, and there has been no showing that any Paragon employee has ever been in Michigan for the purpose of conducting business there. It was Kerry Steel that initially contacted Paragon in Oklahoma—and Paragon responded without leaving home, as it were. . . . Kerry Steele may or may not have reached out to Oklahoma, but in no way has it been shown that Paragon reached out to Michigan.

> The mere fact that Paragon entered into a contract with a Michigan corporation does not mean that Paragon purposefully availed itself of the benefits and protections of Michigan law.

*Id.* at 151 (internal quotation marks omitted). Similarly, in *LAK, Inc. v. Deer Creek Enterprises*, 885 F.2d 1293 (6th Cir. 2989), the Sixth Circuit held that the defendant, an Indiana partnership, could not be subjected to personal jurisdiction in Michigan regarding a contract for the sale of Florida real property to a Michigan partnership because its contacts with Michigan were "random" and "attenuated." *Id.* at 1301. The parties' negotiations began in Florida, continued by phone between Indiana and Michigan, and culminated in the plaintiff's signing the contract in Michigan. The court concluded: "There has been no showing that the object of Deer Creek's contacts with Michigan was to have 'ongoing,' or 'far-reaching,' or 'continuous,' or 'substantial' consequences in the Michigan real estate market, thereby affording jurisdiction to the Michigan courts." *Id.* at 1303.

9

In the instant case, the only contact Defendants Waller and Matrix have with Michigan is that they entered into a contract with a Michigan business for the purchase of personal property in Texas.[5]  The contract was negotiated in Texas and was to be performed in Texas.  There is no indication that Defendants traveled to Michigan to negotiate the contract, nor did they reach out to Plaintiffs in Michigan.  Thus, Defendants' contacts with Michigan are even more "fortuitous" or "attenuated" than those of the defendants in *Kerry Steel, Inc.* and *LAK, Inc.  See Walden v. Fiore*, __ U.S. __, 134 S. Ct. 1115, 1122 (2014) (noting that "the plaintiff cannot be the only link between the defendant and the forum," but instead, "it is the defendant's conduct that must form the necessary connection with the forum state that is the basis for its jurisdiction over him").  Having concluded that Plaintiffs have failed to demonstrate purposeful availment, the Court need not consider the second and third parts of the *Mohasco* test.

**C.      Improper Venue**

Defendants finally contend that venue in this district is improper.  The Court agrees. Pursuant to the federal venue statute, venue is proper in

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated; or

> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

---

[5] Defendant Elite was not a party to the Agreement.  Therefore, it has no contacts whatsoever with Michigan relating to Plaintiffs' claims.

28 U.S.C. § 1391(b). Applying this statute to the facts of the case, venue would be proper in Texas, where a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred, or possibly in Louisiana, where Defendant Holland resides. However, venue is not proper in this district. Plaintiffs' reliance on Michigan's venue statute is misplaced because "[i]n a diversity case, venue is determined according to 28 U.S.C. § 1391(b)." *Great Lakes Paper Stock Corp. v. Buffalo Recycling Enters. LLC*, No. 13-CV-14112, 2014 WL 495421, at *3 (E.D. Mich. Feb. 6, 2014).[6]

### III. Conclusion

For the foregoing reasons, the Court will grant Defendants' motion and dismiss Defendants Matrix, Elite and Waller from this case.

An Order consistent with this Opinion will enter.

Dated:  December 18, 2014                              /s/ Gordon J. Quist
                                                     GORDON J. QUIST
                                              UNITED STATES DISTRICT JUDGE

---

[6] Plaintiffs' reference to the moving party's burden on a motion to transfer venue misses the mark. Defendants are asking the Court to dismiss the case based on improper venue, not to transfer the case to a more convenient venue pursuant to 28 U.S.C. § 1404(a). In fact, the Court could not order such a transfer because to do so venue must be proper in the transferor court. *Van Dusen v. Barrack*, 376 U.S. 612, 634, 84 S. Ct. 805, 818 (1964).